IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FROST-TSUJI ARCHITECTS, | ) | CIVIL NO. 13-00496 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING SUMMARY |
| | ) | JUDGMENT IN FAVOR OF ALL |
| vs. | ) | DEFENDANTS WITH RESPECT TO |
| | ) | COUNT IV OF THE SECOND |
| HIGHWAY INN, INC.; HO`OLA | ) | AMENDED COMPLAINT; ORDER |
| MAU, LLC; BRYCE UYEHARA, | ) | DENYING PARTIAL SUMMARY |
| A.I.A., INCORPORATED; J. | ) | JUDGMENT WITH RESPECT TO |
| KADOWAKI, INC.; FESTIVAL | ) | COUNT V OF THE SECOND AMENDED |
| MANAGEMENT CORPORATION; et | ) | COMPLAINT; ORDER DENYING AS |
| al, | ) | MOOT DEFENDANT J. KADOWAKI, |
| | ) | INC.'S MOTION FOR PARTIAL |
| Defendants. | ) | SUMMARY JUDGMENT AS TO |
| | ) | STATUTORY DAMAGES AND |
| _____ | ) | ATTORNEYS' FEES PURSUANT TO |
| | | COUNT IV AND MOTION TO |
| | | CONTINUE THAT MOTION; ORDER |
| | | DENYING MOTION TO FILE THIRD- |
| | | AMENDED COMPLAINT |

**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF ALL DEFENDANTS WITH
RESPECT TO COUNT IV OF THE SECOND AMENDED COMPLAINT; ORDER
DENYING PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNT V OF THE
SECOND AMENDED COMPLAINT; ORDER DENYING AS MOOT DEFENDANT
J. KADOWAKI, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO STATUTORY DAMAGES AND ATTORNEYS' FEES PURSUANT TO
COUNT IV AND MOTION TO CONTINUE THAT MOTION; ORDER
DENYING MOTION TO FILE THIRD-AMENDED COMPLAINT**

I.      **INTRODUCTION.**

        This case involves an architectural firm's claims that

a restaurant is using the architectural firm's designs without

having paid for them.  The restaurant's position is that it ended

its agreement with the architectural firm when the firm refused

to work within budget, and that it is acting within its rights.

        Before the court are competing motions filed by

Plaintiff Frost-Tsuji Architects, on the one hand, and Defendants

Highway Inn, Inc., and Ho`ola Mau LLC (collectively, "Highway Inn"), on the other.  Both sides seek summary judgment on the copyright claim asserted in Count IV of the Second Amended Complaint.  In a related motion, Defendant J. Kadowaki, Inc., seeks a determination that Frost-Tsuji is not entitled to statutory damages or attorneys' fees in connection with Count IV. Also before the court is a motion to continue the Kadowaki motion.  The court also has before it Highway Inn's motion for partial summary judgment on Count V, which alleges that Frost-Tsuji's copyright management information was wrongfully removed from its architectural plans.

Frost-Tsuji, the architectural firm, originally sought partial summary judgment with respect to several portions of Count IV of the Second Amended Complaint, see ECF No. 55, but has since clarified that its motion is limited to "the issue[] of whether any of the named defendants had a license to use and/or copy [its] copyrighted work after [its] termination." See ECF No. 99.  A decision that Defendants have a license would moot out other issues raised by Count IV.  Highway Inn, the restaurant owner, argues that, because its use of any of Frost-Tsuji's work was "fully licensed," Frost-Tsuji cannot maintain any copyright claim.  See ECF No. 176.

The court agrees that Highway Inn had a nonexclusive implied license to use the plans created by Frost-Tsuji in the

construction of and permitting for the contemplated restaurant. Accordingly, Highway Inn and the other Defendants did not violate any of the rights Frost-Tsuji claims in Count IV to have had as a copyright owner.  Summary judgment is therefore granted in favor of Defendants with respect to Count IV of the Second Amended Complaint.  This ruling renders moot Kadowaki's motion seeking a determination that Frost-Tsuji is not entitled to statutory damages or attorneys' fees in connection with Count IV. Accordingly, that motion and the motion seeking to continue that motion are denied without a hearing pursuant to Local Rule 7.2(d).

The court denies partial summary judgment in favor of Highway Inn with respect to Count V of the Second Amended Complaint, as Highway Inn fails to meet its initial burden as to whether Highway Inn or any Highway Inn agent removed the copyright management information at issue in that count.

II.         **FACTUAL BACKGROUND**

On or about December 1, 2012, Highway Inn hired Frost-Tsuji to design and oversee the development of a full-service restaurant in the Kakaako area of Honolulu.  Frost-Tsuji was not the first firm to tackle this project, having been preceded by DKKY Architecture Studio, Inc., whose plans, drawings, schematics, and layouts Frost-Tsuji received copies of.  <u>See</u>

Declaration of Monica Toguchi ¶ 4, ECF No. 141-2, PageID # 1514; Declaration of Monica Toguchi, ¶ 7, ECF No. 177-1, PageID # 1777.

Highway Inn and Frost-Tsuji entered into a letter agreement dated December 1, 2012.  See ECF No. 56-4, PageID #s 472-73.  Pursuant to that agreement, Frost-Tsuji was to "coordinate and manage [Highway Inn's] consultant team and provide for Concept, Schematic, Design Development and Construction Document Phases."  Id., PageID # 472.

The letter agreement stated, "Any termination of this Agreement shall be per AIA Standard Contract language which is either party may terminate this agreement at any time with 7 day written notice."  Id., PageID # 473.

The letter agreement further stated that, "per AIA standard contract, Architect's drawings, specifications, and all design work are 'instruments of service', and all copyrights to all items designed are for the specific jobsite address only, and design copyrights, formulas, custom furniture, fixtures or fabrics remain under the ownership of the Architect."  Id.

The parties contemplated that the letter agreement would be followed by a formal contract.  Thus, the letter agreement required Frost-Tsuji to "convert" the letter agreement "into a Standard AIA Short Form Contract between Architect and Owner, not later than December 31, 2012."  Id.  Frost-Tsuji did not meet that deadline.  Instead, it waited until February 1,

4

2013, to propose a contract, which Frost-Tsuji labeled "DRAFT."
<u>See</u> Declaration of Monica Toguchi ¶ 11, ECF No. 177-1, PageID #
1779.  Highway Inn marked up the proposed contract and returned
it to Frost-Tsuji on or about March 1, 2013.  Frost-Tsuji did not
make any of the changes Highway Inn sought.  <u>See</u> Toguchi Decl.
¶ 12-13, PageID #s 1779-80.

        The contract proposed by Frost-Tsuji did not entirely
track the letter agreement.  For example, the letter agreement
noted that the project was to end "not later than June 15, 2012,"
and that Frost-Tsuji would provide its services "for a NOT TO
EXCEED SUM of $97,500."  ECF No. 56-4, PageID # 473.  The draft
contract, on the other hand, had a "Substantial Completion date"
of July 15, 2013, and provided for Highway Inn to pay Frost-Tsuji
$97,500.  <u>See</u> ECF No. 56-7, PageID #s 504, 513; ECF No. 177-7,
PageID #s 1892, 1901; ECF No. 177-8, PageID #s 1912, 1921.  The
draft contract also had a different scope of work from that
described in the letter agreement, and added a list of additional
services for additional pay.  <u>Compare</u> ECF No. 56-4, PageID # 472,
<u>with</u> ECF No. 177-7, PageID #s 1893-1900.

        The draft contract proposed by Frost-Tsuji appears to
have been based on AIA Document B101-2007, Standard Form of
Agreement Between Owner and Architect.  <u>See</u> ECF No. 56-5.  Had
the parties signed the draft contract as proposed by Frost-Tsuji,
they would have agreed to the following:

Article 9  TERMINATION OR SUSPENSION

§ 9.1 If Owner fails to make payments to the
Architect in accordance with this Agreement,
such failure shall be considered substantial
nonperformance and cause for termination or,
at the Architect's option, cause for
suspension of performance of services under
this Agreement. . . .

        . . . .

§ 9.4. Either party may terminate this
Agreement upon not less than seven days'
written notice should the other party fail
substantially to perform in accordance with
the terms of this Agreement through no fault
of the party initiating the termination.

§ 9.5. The Owner may terminate this Agreement
upon not less than seven days' written notice
to the Architect for the Owner's convenience
and without cause.

§ 9.6. In the event of termination not the
fault of the Architect, the Architect shall
be compensated for services performed prior
to termination, together with Reimbursable
Expenses then due and all Termination
Expenses as defined in Section 9.7.

        . . . .

§ 9.8. The Owner's right to use the
Architect's Instruments of Service in the
event of a termination of this Agreement are
set forth in Article 7 and Section 11.9.

ECF No. 56-7, PageID #s 511-12; ECF No. 177-7, PageID #s 1904-05;

ECF No. 177-8, PageID #s 1924-25.

Section 7.3 of the draft contract states:

Upon execution of this Agreement, the
Architect grants to the Owner a nonexclusive
license to use the Architect's Instruments of
Service solely and exclusively for purposes

of constructing, using, maintaining, altering
and adding to the Project, provided that the
Owner substantially performs its obligations,
including prompt payment of all sums when
due, under this Agreement. . . . The license
granted under this section permits the Owner
to authorize the Contractor, Subcontractors,
Sub-subcontractors, and material or equipment
suppliers, as well as the Owner's consultants
and separate contractors, to reproduce
applicable portions of the Instruments of
Service solely and exclusively for use in
performing services or construction for the
Project.  If the Architect terminates this
Agreement for cause as provided in Section
9.4, the license granted in this Section 7.3
shall terminate.

ECF No. 56-7, PageID # 509; ECF No. 177-7, PageID # 1907; ECF No.

177-8, PageID # 1927.

Section 11.9 of the draft contract states, "If the

Owner terminates the Architect for its convenience under Section

9.5, . . . the Owner shall pay a licensing fee as compensation

for the Owner's continued use of the Architect's Instruments of

Service solely for purposes of completing, using and maintaining

the project as follows:"  ECF No. 56-7, PageID # 514; ECF No.

177-7, PageID # 1902; ECF No. 177-8, PageID # 1922.  In the

standard AIA form that the draft contract was based on, there is

then a blank for the parties to fill in with the licensing fee.

See ECF No. 56-5, PageID # 491.  In the draft contract, Frost-

Tsuji filled in that blank with the following:  "Compensation for

Basic Service + Additional Services earned to Date of Termination

+ Reimbursable Expenses to Date + 15% x Article 11.1 [stating

7

that Highway Inn shall pay Frost-Tsuji $97,500 for its services]
or $14,625, or the remaining amount due on the Contract,
whichever is less."  ECF No. 56-7, PageID # 514; ECF No. 177-7,
PageID # 1907; ECF No. 177-8, PageID # 1922.

The original letter agreement, while requiring Frost-
Tsuji to "convert" the letter agreement "into a Standard AIA
Short Form Contract between Architect and Owner," had not
expressly incorporated by reference the provisions of the AIA
Contract into the letter agreement.  See ECF No. 56-4, PageID #
473.  In executing the letter agreement, even assuming it had
incorporated the "Standard AIA" form, Highway Inn could not have
agreed to the terms of the draft contract later proposed by
Frost-Tsuji.  That is because the draft contract included
provisions that were not part of the standard form.  For example,
as discussed in the preceding paragraph, the standard form had a
blank that Frost-Tsuji filled in as the license fee in the event
Highway Inn terminated the draft agreement.  Highway Inn could
not have known what this material term of the contract would be
when it executed the letter agreement, which was silent as to a
license fee.  Nor could it have known then how Frost-Tsuji would
fill out other blanks in the standard form, or that Frost-Tsuji
would line out certain provisions of the standard form, or change
what was stated in the letter agreement.  See, e.g., ECF No. 177-
7, PageID # 1907.  Frost-Tsuji's additions to and deletions from

the standard form indicate that, when it was "converting" the letter agreement, it exercised considerable discretion. The present record does not indisputably establish what the final contract was to be.

While working with Highway Inn, Frost-Tsuji knew that Highway Inn intended to do business as another company. Thus, on the version of the draft contract that Highway Inn returned to Frost-Tsuji, there is a handwritten note stating that the legal entity to be listed in the documents was to be Ho`ola Mau. Similarly, on February 11, 2013, Wendy Tsuji of Frost-Tsuji sent Monica Toguchi of Highway Inn an e-mail in which Tsuji asked what the legal name for the entity operating the restaurant would be: "your new LLC? With dba added?" ECF No. 177-6, PageID # 1883. Toguchi responded that day with an e-mail stating, "The LLC is Ho`ola Mau but it has not been registered." Id., PageID # 1886.

There is no dispute that Highway Inn never executed the draft contract. At most, it appears that, on or about February 15, 2013, Highway Inn and Frost-Tsuji entered into an additional services agreement. See ECF No. 56-6. That additional services agreement was not the "Standard AIA Short Form Contract between Architect and Owner" contemplated by the letter agreement. Id.

On or about February 6, 2013, Frost-Tsuji sent Highway Inn a bill for $25,286.56. The description for that bill included, "Scope of Work: A. Basic Services: Completion of

Schematic Design Phase" and "Fee: A. Frank Frost, Wendy Tsuji.
Completion of Schematic Design Phase." ECF No. 177-10, PageID
# 1935. The bill was for "ARCHITECTURAL SERVICES FROM JANUARY 1
TO 31, 2013." Id. It also covered "Partial Design Development,
Permit, and Bid Document Phases." Id. Highway Inn paid this
bill the same day with a check for $25,286.56. ECF No. 177-11,
PageID # 1937. Thereafter, Highway Inn paid another bill of
$17,912. According to a memorandum dated April 29, 2013, from
Frost-Tsuji to its attorney, submitted by Frost-Tsuji to this
court, Highway Inn paid $59,400 of the letter agreement's maximum
of $97,500 for basic services, as well as $10,220.98 in
"reimbursable expenses" and GE tax, and $12,000 for additional
services. See 56-12, PageID # 527. The memorandum stated that
Highway Inn owed an additional $39,015.98 for basic and
additional services, plus taxes and reimbursable expenses. Id.

On or about April 25, 2013, Highway Inn's attorney sent
Frost-Tsuji's attorney written notice that Highway Inn was
terminating its contract with Frost-Tsuji "effective
immediately." See ECF No. 56-10, PageId # 522. Highway Inn did
not give the "7 day written notice" required by the letter
agreement for "termination" of the contract. ECF No. 56-4,
PageID # 473,

The termination letter stated that Highway Inn was
concerned that Frost-Tsuji was going way over budget and was

10

going to exceed the maximum fee of $97,500.  Highway Inn's letter
also expressed concern that Wendy Tsuji would "not let go" and
would "not compromise."  The letter complained that Tsuji
expected to use koa wood, which was not in the budget, and that
she had "refused to stamp the plans or work within the budget
despite instructions" from Highway Inn.  See ECF No. 56-10,
PageID # 522.

Toguchi, of Highway Inn, estimates that, at the time
Highway Inn terminated its agreement with Frost-Tsuji, Frost-
Tsuji had completed "less than one third of the services . . .
and deliverables promised under the December 1, 2012 Letter
Agreement."  Toguchi Decl. ¶ 20, ECF No. 177-1, PageID #s 1781-
82.  Yet, as described in the preceding paragraphs, four days
later, Frost-Tsuji was claiming that Highway Inn owed additional
amounts that would have taken the total billed to Highway Inn to
$106,000.  Of that total, $79,000 would have been for "basic
services," indicating that, with possibly only a third of the
work done, Frost-Tsuji was already close to the $97,500 maximum
amount stated in the letter agreement, assuming that the letter
agreement applied only to "basic services."

Frost-Tsuji's attorney says that, on May 3, 2013, he
gave written notice to Highway Inn that the "governing
contractual documents would be terminated on May 10, 2013, for

non-payment."[1]  Declaration of Bennett J. Chin ¶ 6, ECF No. 56-2,
PageID # 465.

It is unclear from the record how much of the
restaurant, if any, had been built or what materials had been
ordered based on Frost-Tsuji's drawings as of the date when the
letter agreement was terminated.  For purposes of the motions now
before the court, the court accepts as true Frost-Tsuji's
contention that someone used and altered its plans after the
letter agreement was terminated.  For example, after Defendant
Bryce Uyehara, A.I.A., Incorporated, was hired to replace Frost-
Tsuji, Uyehara gave Highway Inn a proposal stating that Uyehara
would prepare a design "based upon architectural and engineering
work performed by [Frost-Tsuji] and [Highway Inn's] design and
engineering consultants."  See ECF No. 186-7, PageID # 2049.

Frost-Tsuji claims that the copyright management
information on its plans was removed.  For example, Drawing A-6,

---

[1] Frost-Tsuji did not originally submit a copy of this
document in connection with its motion for summary judgement with
respect to Count IV of the Second Amended Complaint, claiming
that it was a protected communication under Rule 408 of the
Federal Rules of Civil Procedure.  Rule 408 speaks to the
inadmissibility of evidence relating to settlement negotiations
or settlement agreements "to prove or disprove the validity or
amount of a disputed claim or to impeach by a prior inconsistent
statement or a contradiction."  But even if the document included
a "compromise offer," it could be admitted for a purpose
unrelated to settlement, such as to prove when Frost-Tsuji
attempted to terminate the letter agreement. In any event, Frost-
Tsuji did submit the letter of May 3, 2013, in connection with
its opposition to Highway Inn's motion for partial summary
judgment with respect to Count V of the Second Amended Complaint.
See ECF No. 186-8, PageID 2051.

ECF No. 186-10, PageID # 2057, contained Frost-Tsuji's name, address, and telephone number on a plan for the restaurant, as well as the following: "© ALL DRAWINGS, DIGITAL FILES, AND WRITTEN MATERIAL APPEARING HEREIN CONSTITUTE THE ORIGINAL AND UNPUBLISHED WORKS OF THE ARCHITECT AND THE SAME WAY MAY NOT BE DUPLICATED, USED OR DISCLOSED WITHOUT THE WRITTEN CONSENT OF THE ARCHITECT IN ADVANCE OF USE." Frost-Tsuji claims that Uyehara prepared a design plan that used much of Frost-Tsuji's design. Frost-Tsuji's information and copyright language were not included in the documents Uyehara generated, allegedly based on Frost-Tsuji's work. Instead, Uyehara's documents bore the Uyehara company name, and its plan was stamped by Bryce E. Uyehara. See ECF No. 186-9, PageID # 2056.

There is no evidence in the record indicating who, if anyone, "removed" Frost-Tsuji's copyright management information from any document. Highway Inn denies responsibility for the alleged "removal." See Declaration of Monica Toguchi ¶¶ 4-5, ECF No. 135-2, PageID # 1069 (indicating that only Toguchi, Russell Ryan, and Sharen Fern-Chong, of Highway Inn, had access to Frost-Tsuji's plan, and that declarant did not remove or alter any information on Frost-Tsuji's plans); Declaration of Russell Ryan ¶¶ 4-5, ECF No. 135-3, PageID # 1071 (same); Declaration of Sharen Fern-Chong ¶¶ 4-5, ECF No. 135-4, PageID # 1073 (same).

13

**III.     SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.

<u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9ᵗʰ Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9ᵗʰ Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. <u>T.W. Elec. Serv., Inc.</u>, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. <u>Id.</u> (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)). <u>See</u> <u>Addisu</u>, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." <u>Cal. Arch'l Bldg.</u>

Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.      PARTIAL SUMMARY JUDGMENT IS GRANTED IN FAVOR OF DEFENDANTS WITH RESPECT TO COUNT IV OF THE SECOND AMENDED COMPLAINT.**

The issue before this court with respect to the countermotions on Count IV of the Second Amended Complaint boils down to whether Highway Inn had a license to use the architectural plans Frost-Tsuji created for Highway Inn's restaurant even after the agreement was terminated.

A license to use Frost-Tsuji's plans is a defense to the copyright infringement claim asserted in Count IV of the

16

Second Amended Complaint.  See Oddo v. Ries, 743 F.2d 630, 634 n.6 (9th Cir. 1984) (citing 3 M. Nimmer, Nimmer of Copyright § 13.04 (1983)).  The court concludes as a matter of law that Highway Inn had a license to use Frost-Tsuji's architectural plans after the termination of the agreement.  Partial summary judgment is therefore granted in Defendants' favor with respect to the copyright claim asserted in Count IV of the Second Amended Complaint.  This ruling renders moot Kadowaki's motion seeking a determination that Frost-Tsuji is not entitled to statutory damages and attorneys' fees with respect to the copyright claim asserted in Count IV, as well as Frost-Tsuji's motion to continue that motion.

## A. Highway Inn and Its Agents Have a Nonexclusive Implied License to Use Frost-Tsuji's Plans.

Although Frost-Tsuji contends that the December 2012 letter agreement incorporates by reference other terms in the standard AIA contract, the letter agreement contains no express statement to that effect.  At best, it states, "Noted that per AIA standard contract, Architect's drawings, specifications, and all design work are 'instruments of service', and all copyrights to all items designed are for the specific jobsite address only, and design copyrights, formulas, custom furniture, fixtures or fabrics remain under ownership of the Architect."  ECF No. 56-4, PageID # 473.  It then says that Frost-Tsuji "will convert this Letter Agreement into a Standard AIA Short Form Contract between

Architect and Owner, not later than December 31, 2012." Id. As it turned out, the parties never executed such a contract. In fact, what Frost-Tsuji ended up proposing to Highway Inn was materially different from the standard AIA form. Frost-Tsuji's proposal filled in blanks in the form, including, for example, a blank relating to a licensing fee to continue to use Frost-Tsuji's architectural drawings in the event of termination under certain conditions. See ECF No. 56-7, PageID # 514.

"[T]o effectively incorporate by reference a separate writing, or a portion thereof, into a contract, 'the language used . . . must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).'" Safeway, Inc. v. Nordic PCL Constr., Inc., 130 Haw. 517, 527, 312 P.3d 1224, 1234 (Ct. App. 2013) (quoting Northrop Grumman Info. Tech. Inc. v. United States, 535 F.3d 1339, 1345 (Fed. Cir.2008)). No part of the letter agreement clearly incorporates anything by reference. Instead, the letter agreement provides that it will be converted into the standard AIA form. This court thinks it would be a stretch to read a reference to a conversion

as equivalent to an incorporation, much less to an incorporation that has been "clearly communicated."

Frost-Tsuji argues that, if the letter agreement is not read as having incorporated the standard AIA form, Highway Inn could not have acquired a license to use its architectural drawings, because it was the terms of the standard AIA form that provided for a license. However, nonexclusive licenses "'may be granted orally, or may even be implied from conduct.'" Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, Nimmer of Copyright § 10.03[A], at 10-36 (1989)). The Ninth Circuit has recognized that an implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." Asset Marketing Sys., Inc. v. Gagnon, 542 F.3d 748, 754-55 (9th Cir. 2008) (quotation marks and citation omitted).

In Foad Consulting Group v. Musil Govan Azzalino, 270 F.3d 821 (9th Cir. 2001), the Ninth Circuit held that a nonexclusive license to copy and modify architectural plans can be implied from the parties' agreement and conduct. That case involved facts similar to those presented here. Foad Consulting was hired by GenCom, Inc., to create a "preliminary Concept

Development Plan" for a shopping center.  GenCom submitted Foad Consulting's plans to the city of Arroyo Grande, California, for approval.  After receiving that approval, GenCom transferred its rights to develop the project to Claire Enterprises, LLC, which, in turn, hired Hawkeye Investments, LLC, as the project developer.  Hawkeye then hired Musil Govan Azzalino to perform architectural and engineering services.  Based on the documents prepared by Foad Consulting that the city had approved, Musil Govan prepared final plans for the project, copying much of Foad Consulting's work.  Foad Consulting then contended that its copyrighted plans were being infringed.  Id. at 824-25.

In examining the copyright claim, the Ninth Circuit noted that the owner of a copyright has the exclusive right to reproduce, adapt, publish, perform, and display a copyrighted work.  Id. at 825 (citing 17 U.S.C. § 106).  The court noted that the copyright holder may transfer any or all of these exclusive rights, but must do so in writing.  Id. (citing 17 U.S.C. § 204(a)).  The contract between Foad Consulting and GenCom did not transfer an exclusive right, but the writing requirement applies only to the transfer of exclusive rights.  "[G]rants of nonexclusive copyright licenses need not be in writing."  Id. The contract between Foad Consulting and GenCom granted GenCom "an implied license to use the revised plot plan to complete development of the project, to hire another firm to create

derivative works using the revised plot plan for the purpose of completing the project, and to publish the resulting work." Id. at 826. GenCom also had an implied license to reproduce plans to build the project.

Examining the fee of $175,000 and the contract's requirement that Foad Consulting help with Gencom's application to the city, the Ninth Circuit said that "it would be surprising if the parties had intended for GenCom to seek Foad's permission before using the plans to build the project. . . . [N]owhere does the contract state that after the city had granted its approval, GenCom would need to obtain Foad's permission before commencing work." Id. at 828-29. The Ninth Circuit noted that not to find an implied license to continue to use the plans would allow architectural firms "to hold entire projects hostage, forcing the owner either to pay the firm off, continue to employ it, or forego the value of all work completed so far and start from scratch." Id. at 829 n.12.

The Ninth Circuit also determined in Foad Consulting that the contract granted GenCom an implied license to adapt the plans; nothing in the contract prohibited others from modifying the plans. Id. at 829. Instead, the contract contained language indicating that Foad Consulting would be indemnified in the event of liability arising out of others' modification of its plans. Id.

Although Claifornia law applied in Foad Consulting, this court finds nothing in Hawaii law suggesting a different result. The only contract before this court is the December 2012 letter agreement. Like the agreement in Foad Consulting, the letter agreement contemplates Frost-Tsuji's creation of plans for the restaurant and Frost-Tsuji's assistance in obtaining building permits and other approvals. See ECF No. 56-4, PageID # 472. Highway Inn was to pay up to $97,500 under the terms of the letter agreement, and, as the Ninth Circuit noted in Foad Consulting, "it would be surprising if the parties had intended for [Highway Inn] to seek [Frost-Tsuji's] permission before using the plans to build the project." Foad Consulting, 270 F.3d at 828.

The parties may have assumed that Frost-Tsuji would act as Highway Inn's architect throughout the building of the restaurant, but they also contemplated the possible termination of the letter agreement. The letter agreement did not unambiguously state what would happen to the work Frost-Tsuji had already done before the termination of the letter agreement. Under these circumstances, and consistent with Foad Consulting, Highway Inn had a license to use Frost-Tsuji's architectural plans to build its restaurant, as Highway Inn had requested the creation of the plans, and Frost-Tsuji had made the plans and delivered them to Highway Inn with the intention that Highway Inn

use, copy, and distribute them.  See Asset Marketing Sys., 542
F.3d at 754-55.

The court also concludes that Highway Inn's implied
license allowed its contractors and another architectural firm to
use (copy, reproduce, and adapt) the plans to complete the
project.

Clearly, Highway Inn paid for something.  Before the
letter agreement was terminated, Frost-Tsuji sent Highway Inn a
bill for $25,286.56, dated February 6, 2013, for "ARCHITECTURAL
SERVICES FROM JANUARY 1 TO 31, 2013."  The bill stated:  "Scope
of Work: A. Basic Services: Completion of Schematic Design Phase"
and "Fee: A. Frank Frost, Wendy Tsuji.  Completion of Schematic
Design Phase."  ECF No. 177-10, PageID # 1935.  Highway Inn paid
the bill the same day via a check for $25,286.56.  ECF No. 177-
11, PageID # 1937.  If payment for "Schematic Design Phase"
refers to payment for Frost-Tsuji's architectural plans, Highway
Inn could be said to have paid for the right to use those plans
in constructing its restaurant.[2]

---

[2]   Frost-Tsuji submitted its plans to the court as Oversized
Exhibit M to its Concise Statement in Support of its Motion for
Partial Summary Judgment.  Exhibit M is dated January 10, 2013.
That date suggests that Highway Inn paid for the plans at issue
in this case when it paid the bill covering January 2013, which
would have included the architectural plan submitted to the court
as oversized Exhibit M.

Even if the reference to "Schematic Design Phase" completion
in the February 6, 2013, bill did not refer to the architectural
plans at issue, the bill also stated that it was for "Partial
Design Development, Permit, and Bid Document Phases."  The court

To deny Highway Inn a license to use and adapt Frost-Tsuji's plans would allow Frost-Tsuji to hold the project hostage until an owner like Highway Inn paid a "ransom" for the continued use of the plans. As the Ninth Circuit noted in Foad Consulting, not every owner can start from scratch after the owner's contractual agreement with an architect terminates, especially when government approvals have already been obtained based on earlier plans. The Ninth Circuit implied a license for the continuing use of architectural plans in Foad Consulting, and this court implies Highway Inn's license to continue to use Frost-Tsuji's plans.

In Foad Consulting, having determined that GenCom had a license to use the architectural plans to build the shopping center, the Ninth Circuit determined that all of the defendants in that case (including the party that had asked Foad Consulting to design the plans, the project developer, and the replacement architectural firm) had reproduced and adapted Foad Consulting's plans within the scope of Foad Consulting's implied license. Accordingly, the Ninth Circuit affirmed the grant of summary judgment by the district court to those defendants with respect to the copyright claim against them. See 270 F.3d at 824. This

<hr>

does not have before it the subsequent bills from Frost-Tsuji to Highway Inn, and therefore cannot tell what those bills covered, but notes that Frost-Tsuji might have finished the "Design Development" phase before Highway Inn paid the next bill of $17,912.77. See ECF No. 56-12, PageID # 527.

court similarly rules that, to the extent Frost-Tsuji asserts a copyright claim against other Defendants who used and adapted Frost-Tsuji's plans within the scope of Highway Inn's implied license, those other Defendants are also entitled to summary judgment with respect to the copyright claim. Their license to use the plans derives from Highway Inn's. That is, because Highway Inn had a nonexclusive implied license to use Frost-Tsuji's architectural plans in connection with the building of its restaurant, its contractors and subsequent architectural firm did too. Nothing in the record indicates that they exceeded the scope of that license by any use or adaptation of those plans when building the restaurant.

Frost-Tsuji claims that Highway Inn still owes it $39,015.85 under the contract. See ECF No. 56-12, PageID # 527. It argues that Highway Inn was therefore not entitled to a license. Putting aside the issue of whether Frost-Tsuji could charge more than the maximum of $97,500 stated in the letter agreement, the court concludes that full payment is not a condition precedent to implying a license in this case.

In Effects Associates, Inc. v. Cohen, 908 F.2d 555, 559 n.7 (1990), the Ninth Circuit declined to construe payment in full as a condition precedent to implying a license. The Ninth Circuit noted that a condition precedent is disfavored and will

not be read into a contract unless required by plain and unambiguous language.

According to an exhibit submitted to this court by Frost-Tsuji, Highway Inn paid $59,400 of the basic services contract that had a cap of $97,500. Highway Inn also paid $12,000 for additional services and $10,220.98 in taxes and other reimbursable expenses, for a total of $81,620. See ECF No. 56-12, PageId # 527. Frost-Tsuji says Highway Inn has failed to pay $19,600 for basic services, $15,000 for additional services, and $4,415.85 in taxes and other reimbursable expenses. Id. Highway Inn's payment of a substantial amount constituting well over half the maximum contract amount supports the implication of a license to use and adapt the plans created by Frost-Tsuji, even if Highway Inn failed to pay all it owed.

In Cohen, Larry Cohen paid Effects Associates only part of the money he had agreed to pay for the creation of an explosion scene that he intended to include in a movie. Cohen nevertheless used the scene in the movie. See 908 F.2d at 555-56. The Ninth Circuit rejected Effects Associates' claim that Cohen lacked a license to use the scene until he paid the full contract price. The Ninth Circuit determined that a license to use the scene in the movie was granted because Effects Associates created the scene at Cohen's request and handed it over to Cohen with the intention that he be allowed to use it. Id. at 558-59.

The court could not square Cohen's payment of nearly $56,000 to Effects Associates with Effects Associates' claim that Cohen had no license to use the scene in the film. Cohen's nonexclusive license to use the scene in the film meant that Effects Associates had no valid copyright claim relating to that use. To the extent Cohen owed more money for that use, Effects Associates could pursue other state-law causes of action, including breach of contract claims. Id. at 559.

Like Cohen, Highway Inn paid a substantial sum for the architectural plans that it asked Frost-Tsuji to create and that it received from Frost-Tsuji. This payment supports an implied nonexclusive license for Highway Inn to use those plans in the construction of the restaurant. The license is a defense to the copyright claim asserted in Count IV of the Second Amended Complaint. Any failure by Highway Inn to pay the full contract price for the plans does not extinguish the license, instead simply giving rise to state-law claims for the nonpayment.

**B. Highway Inn's License Was Not Terminated By The Termination of the Letter Agreement.**

Frost-Tsuji argues that, based on the standard AIA contract language, any license Highway Inn may have had to use its architectural plans terminated when Frost-Tsuji terminated its relationship with Highway Inn. Try as it might, however, Frost-Tsuji has not demonstrated that the standard AIA form or the draft contract containing that language governs the

27

relationship between Frost-Tsuji and Highway Inn.  Highway Inn did not sign the draft contract.  Highway Inn did execute the letter agreement of December 1, 2012.  The court does not read the letter agreement as having incorporated the termination language of the standard AIA form.  See ECF No. 56-4.

Earlier in this order, this court noted that the letter agreement does not expressly incorporate the standard AIA form, although it refers to it.  With respect to termination of the agreement, the letter agreement states, "Any termination of this Agreement shall be per AIA Standard Contract language which is either party may terminate this agreement at any time with 7 day written notice."  Frost-Tsuji argues that this language should be read as incorporating the language governing termination in the AIA standard form.  The standard form includes a requirement that seven days' written notice be given before termination, and also provides that an owner's nonexclusive license to use an architect's work is conditioned on, among other things, prompt payment of all sums when due.  ECF No. 56-5, PageID #s 486, 488-89.  Frost-Tsuji argues that, because Highway Inn failed to give seven days' written notice, Highway Inn's termination notice of April 23, 2013, was ineffective, and that, moreover, Highway Inn has no license to use Frost-Tsuji's work because Highway Inn has not paid all sums due.  ECF No. 55-1, PageID # 490.  The court,

however, does not read the termination language in the letter agreement as being as unequivocal as Frost-Tsuji does.

The Hawaii Supreme Court has stated that, in construing a contract, a court's principal objective is to ascertain and effectuate the intent of the parties as manifested by the contract in its entirety.  If there is any doubt, the interpretation that "most reasonably reflects the intent of the parties" must be chosen.  Univ. of Haw. Prof'l Assembly v. Univ. of Haw., 66 Haw. 214, 219, 659 P.2d 720, 724 (1983) (quoting Haw. State Teachers Ass'n v. Haw. Pub. Employment Relations Bd., 60 Haw. 361, 368, 590 P.2d 993, 998 (1979)).  However, it has also been said that "[a]mbiguities in a contract are construed against the drafter."  See Koga Eng'g & Constr., Inc. v. Hawaii, 122 Haw. 60, 72 n.19, 222 P.3d 979, 991 n.19 (2010); accord Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 110 n.5, 839 P.2d 10, 25 N.5 (1992) (noting that, when a contract is open to more than one reasonable interpretation, it is "interpreted most strongly against the party who has drafted the language").  These rules governing the construction of contracts are not irreconcilable. This court gives primacy to the parties' intent but construes ambiguities in a contract against the drafter as a last resort, "when other rules of interpretation have failed to elucidate the contract's meaning."  HRPT Props. Trust v. Lingle, 715 F. Supp. 1115, 1130 (D. Haw. 2010).

Here, the parties' intent with respect to termination of the letter agreement is unclear.  The sentence at issue could be read to mean that "Any termination of this Agreement shall be per AIA Standard Contract language."  But the phrase "which is either party may terminate this agreement at any time with 7 day written notice" could reasonably be read as describing the entirety of the parties' understanding of standard AIA contract termination provisions.  That is, it could be read as allowing either party to terminate the letter agreement by providing written notice seven days before the effective date of the termination, without further penalty or obligation other than pursuant to ordinary contract law.  No evidence has been submitted to the court enabling the court to determine which interpretation better matches the parties' intent.  Even if the court assumes that Frost-Tsuji intended to incorporate the standard AIA contract language on this point, there is no evidence of a meeting of the minds on this point.  At best, Frost-Tsuji argues that Highway Inn did not attempt to negotiate a change to the termination provisions in the draft contract, which tracked the standard form.  But that draft contract was never agreed to.

Typically, when the parties' intent cannot be determined at the summary judgment stage, it is a matter left for determination at trial.  Here, though, the court is at a loss to

identify the triable matter.  The record includes no competing affidavits or declarations, each outlining a different understanding.  The court is presented with no deposition testimony to be probed for inconsistency, no factual assertion challenged as to credibility, and no exchange of correspondence on this subject that could be elucidated at trial.  The parties have limited themselves to presenting the letter agreement, the draft contract, and the standard AIA form.  No one contests the contents of those documents.  The dispute rests solely on how to read the undisputed language.  This is not a matter subject to resolution at trial.  In the court's view, this situation is made for application of the rule of last resort.  The parties identify no manner in which a trial can determine their intent.

Because the record does not disclose the parties' intent as to how to read the termination language in the letter agreement, and because the letter agreement was sent to Highway Inn by Wendy Tsuji of Frost-Tsuji, the court applies the rule of last resort and construes the ambiguous language against Frost-Tsuji.  That is, the court reads the termination language as indicating that the letter agreement could be terminated by either party on written notice seven days before termination.

The e-mail Highway Inn sent to Frost-Tsuji on April 25, 2013, to terminate the letter agreement did not provide seven days' notice; it stated that it was effective immediately.  <u>See</u>

ECF No. 56-10.  Frost-Tsuji argues that the termination notice therefore had no effect.  Instead, Frost-Tsuji argues, the relationship continued until Frost-Tsuji subsequently terminated it based on Highway Inn's nonpayment.  See Chin Decl. ¶ 6, ECF No. 56-2, PageID # 465.  Relying on paragraph 7.4 of the draft contract, which tracks the standard AIA form, Frost-Tsuji says that, because it terminated the relationship for cause (i.e., nonpayment), any license Highway Inn had to use Frost-Tsuji's architectural drawings also terminated.  The court disagrees.

        Although there is no Hawaii law directly on point, it is often thought that, when a party seeks to terminate a contract before the notice period stated in the contract, the termination becomes effective at the end of the period, rather than being wholly ineffective, especially when the other party could not cure a default.  See, e.g., 17A Am. Jur. 2d Contracts § 144 ("considerable authority supports the view that a notice of cancellation allowing a period of time shorter than that stipulated in a contract is effective after lapse of full time, although there is contrary authority"); Crais III, W.C., Effect of Attempt to Terminate Employment or Agency Contract Upon Shorter Notice Than That Stipulated in Contract, 96 A.L.R. 272, § 2 ("The cases are fairly harmonius in recognizing as a general principle that a notice to terminate an agency or employment contract, although allowing the noticed party a shorter period of

time than that stipulated in the contract, is not wholly inoperative, but serves to terminate the relationship after the expiration of the stipulated time."); Crais III, W.C., <u>Effect of Attempt to Terminate Insurance or Fidelity Contract Upon Notice Allowing a Shorter Period Than That Stipulated in Contract</u>, 96 A.L.R. 286, § 3 ("most courts are agreed that a notice, otherwise sufficient in form and content, which purports to cancel an insurance or fidelity contract at a time earlier than that permitted under the pertinent cancellation provisions of the contract is not wholly ineffective but serves to cancel the contract and the coverage afforded by it at the expiration of the permitted time").

Even if Highway Inn's termination did not take immediate effect on April 25, 2013, it took effect seven days later. That is, Highway Inn's termination letter "became effective May 3, 2013, in accordance with the terms of the Letter Agreement," as Frost-Tsuji itself at one point concedes, <u>see</u> ECF No. 198, PageID # 2167, notwithstanding its contention elsewhere that Highway Inn's termination e-mail was wholly ineffective.

Highway Inn appears to have wanted to end its relationship with Frost-Tsuji because Frost-Tsuji was going over budget and wanted to use expensive materials that were not in the budget. Frost-Tsuji gave no indication that it would or could stay within the $97,500 budget for the two-thirds of the contract

Highway Inn says remained.  The letter agreement allowed Highway
Inn to terminate the agreement, but only with seven days' notice.
Even if, as Frost-Tsuji argues, the letter agreement was not
terminated until Frost-Tsuji sent Highway Inn a notice of
termination in May 2013, that is a distinction without a
difference under the facts presented here.  As noted earlier, the
draft contract does not govern the parties' relationship.  Under
the letter agreement, which party terminated the letter agreement
is irrelevant to Highway Inn's right to use the architectural
plans.

### C. Highway Inn Was Permitted To Transfer The License to Ho`ola Mau.

Frost-Tsuji argues that, even if Highway Inn had an
implied nonexclusive license to use Frost-Tsuji's plans, Highway
Inn had no right to transfer that license to Ho`ola Mau.  As
Frost-Tsuji notes, the letter agreement contains no express
provision for any transfer.  But the court has before it evidence
that the parties clearly contemplated a transfer.  Frost-Tsuji
protests that the parol evidence rule bars consideration of
extrinsic evidence to determine whether the parties contemplated
a transfer.  The parol evidence rule provides that, when there is
a single final written instrument setting forth the parties'
understanding, all prior and contemporaneous negotiations are
excluded and superseded by the written instrument.  See State
Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 324,

978 P.2d 753, 762 (1999); <u>Pancakes of Hawaii, Inc. v. Pomare</u>
<u>Props. Corp.</u>, 85 Haw. 300, 310, 944 P.2d 97, 107 (Ct. App. 1997).

The letter agreement is clearly not the final written
instrument contemplated by the parties.  It provides for Frost-
Tsuji to convert it into a standard AIA form contract.  <u>See</u> ECF
No. 566-4, PageID # 473.  According to Highway Inn, Frost-Tsuji
understood that the restaurant would be placed into the name of
an LLC.  <u>See</u> Declaration of Monica Toguchi ¶ 9, ECF No. 177-1,
PageID # 1778.  Whether or not negotiations about the LLC
occurred even before the letter agreement was signed, the parties
subsequently contemplated putting the designs and applications
for government approval in the name of Ho`ola Mau.  The parol
evidence rule does not bar evidence of what the parties agreed to
after the letter agreement was signed.

On or about February 11, 2013, two months after the
letter agreement was signed, Wendy Tsuji sent Monica Toguchi of
Highway Inn an e-mail asking for the final legal name that would
appear on the drawings and specifications.  <u>See</u> ECF No. 177-6,
PageID # 1883.  That e-mail asked Highway Inn whether the name
was going to be "your new LLC?"  <u>Id.</u>  Toguchi responded in an e-
mail that same day that "The LLC is Ho`ola Mau but it has not
been registered."  <u>Id.</u>, PageID # 1886.  This suggests that,
before the contractual relationship between Frost-Tsuji and
Highway Inn terminated, Frost-Tsuji agreed that the drawings

could be in the name of Ho`ola Mau such that Ho`ola Mau could

contract with other businesses to finish building the restaurant.

In any event, Ho`ola Mau's use of the plans was within the scope

of Highway Inn's license, given Frost-Tsuji's design of plans for

a restaurant that it knew Highway Inn wanted to put in its LLC's

name.

**V.      PARTIAL SUMMARY JUDGMENT IS DENIED WITH RESPECT TO COUNT V OF THE SECOND AMENDED COMPLAINT.**

Count V of the Second Amended Complaint asserts a

violation of 17 U.S.C. § 1202(b)(1), which states:

> No person shall, without the authority of the
> copyright owner or the law--
>
> (1) intentionally remove or alter any
> copyright management information
>
>      . . . .
>
> knowing, or, with respect to civil remedies
> under section 1203, having reasonable grounds
> to know, that it will induce, enable,
> facilitate, or conceal an infringement of any
> right under this title.

This provision has been read as containing three elements:

> To state a claim for removal of [copyright
> management information] under 17 U.S.C.
> § 1202(b)(1), a plaintiff must allege that a
> defendant: (1) without authority of the
> copyright owner or the law; (2) intentionally
> removed or altered [copyright management
> information]; (3) knowing or having
> reasonable grounds to know that the removal
> will induce, enable, facilitate, or conceal
> an infringement of the federal copyright
> laws.

<u>Imageline, Inc. v. CafePress.com, Inc.</u>, 2011 WL 1322525, *6 (C.D. Cal. Apr. 6, 2011) (citing 17 U.S.C. § 1202(b)(1)).

Highway Inn seeks partial summary judgment with respect to Count V, arguing that it cannot be liable for removal of Frost-Tsuji's copyright management information. Of Highway Inn's employees and principals, only Monica Toguchi, Russell Ryan, and Sharen Fern-Chong had access to Frost-Tsuji's plans. Each of them claims that he or she did not remove or otherwise alter any of Frost-Tsuji's copyright management information. <u>See</u> Declaration of Monica Toguchi ¶¶ 4-5, ECF No. 135-2, PageID # 1069; Declaration of Russell Ryan ¶¶ 4-5, ECF No. 135-3, PageID # 1071; Declaration of Sharen Fern-Chong ¶¶ 4-5, ECF No. 135-4, PageID # 1073. Therefore, Highway Inn contends it is entitled to summary judgment with respect to Count V.

The court is struck by the narrow scope of the declarations. They refer to employees and principals, while saying nothing about other persons Highway Inn may have directed, influenced, or controlled (e.g., agents, contractors, friends, family, attorneys, or other representatives). For that reason, the court rules that Highway Inn fails to meet its initial burden with respect to the motion for partial summary judgment as to Count V. That motion is therefore denied.

**V.          CONCLUSION**

The court grants partial summary judgment in favor of Defendants and against Frost-Tsuji on the copyright claim asserted in Count IV of the Second Amended Complaint.

In so ruling, the court disposes of ECF Nos. 55, 176, 184, 189, 190, and 193.  This court's ruling as to the copyright claim renders moot Kadowaki's motion seeking to restrict damages relating to that claim, as well as Frost-Tsuji's motion to continue Kadowaki's motion.  This order thus also disposes of ECF Nos. 140, 150, 152, 153, 157, 159, and 215.

Given the dismissal of Count IV, it would be inappropriate to allow Frost-Tsuji to file a Third Amended Complaint reasserting the same claim.  Accordingly, its motion (ECF No. 217) of August 13, 2014, which seeks leave to file a Third Amended Complaint, is denied without prejudice.  Any future motion to amend the complaint must take into account the rulings already entered in this case.

The court denies partial summary judgment with respect to the copyright management claim asserted in Count V of the Second Amended Complaint, disposing of ECF Nos. 134 and 184.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 26, 2014.



   /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Frost-Tsuji Architects v. Highway Inn, Inc., et al., Civ. No. 13-00496 SOM/BMK; ORDER
GRANTING SUMMARY JUDGMENT IN FAVOR OF ALL DEFENDANTS WITH RESPECT TO COUNT IV OF THE
SECOND AMENDED COMPLAINT; ORDER DENYING PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNT
V OF THE SECOND AMENDED COMPLAINT; ORDER DENYING AS MOOT DEFENDANT J. KADOWAKI, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO STATUTORY DAMAGES AND ATTORNEYS' FEES
PURSUANT TO COUNT IV AND MOTION TO CONTINUE THAT MOTION; ORDER DENYING MOTION TO FILE
THIRD-AMENDED COMPLAINT