IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FROST-TSUJI ARCHITECTS, | ) | CIVIL NO. 13-00496 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION FOR |
| | ) | RECONSIDERATION OF ORDER |
| vs. | ) | FILED ON AUGUST 26, 2014 |
| | ) | |
| HIGHWAY INN, INC.; HO`OLA | ) | |
| MAU, LLC; BRYCE UYEHARA, | ) | |
| A.I.A., INCORPORATED; J. | ) | |
| KADOWAKI, INC.; FESTIVAL | ) | |
| MANAGEMENT CORPORATION; et | ) | |
| al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION
OF ORDER FILED ON AUGUST 26, 2014**

I.      **INTRODUCTION.**

Plaintiff Frost-Tsuji Architects seeks reconsideration
of the order entered on August 26, 2014, granting summary
judgment against Frost-Tsuji on its copyright infringement claim
in Count IV of the Second Amended Complaint. Frost-Tsuji claims
but does not establish clear error in the order.

No one disputes that Frost-Tsuji owns the copyright in
drawings it created for Defendant Highway Inn, Inc., depicting a
restaurant Highway Inn planned to build. Even if the court
assumes that Highway Inn used those drawings to construct its
restaurant, Highway Inn clearly had a license to do that. That
license is a complete defense to the copyright claim asserted in
Count IV for not only Highway Inn, but also for other Defendants
in this case. The arguments raised in the motion for

reconsideration are unsupported by the record and contradict admissions Frost-Tsuji previously made.[1]  While Frost-Tsuji urges this court to interpret facts in its favor, this court has already done that, nevertheless ruling against Frost-Tsuji.  In connection with the underlying summary judgment proceeding, Frost-Tsuji failed to provide this court with evidence supporting its argument that there was a genuine issue of fact that needed to be tried.  Accordingly, the court denies the motion for reconsideration.

II.        **FACTUAL BACKGROUND**

        Highway Inn and Frost-Tsuji entered into a letter agreement dated December 1, 2012, requiring Frost-Tsuji to design and oversee the development of a full-service restaurant in the Kakaako area of Honolulu.  See ECF No. 56-4, PageID #s 472-73.  Pursuant to that agreement, Frost-Tsuji was to "coordinate and manage [Highway Inn's] consultant team and provide for Concept, Schematic, Design Development and Construction Document Phases."  Id., PageID # 472.  Frost-Tsuji agreed "to provide the professional services outlined and listed above, for a NOT TO EXCEED SUM of $97,500."  Id., PageID # 473.

_____

        [1]On October 3, 2014, Frost-Tsuji submitted its Reply Memorandum is Support of its Motion for Reconsideration.  See ECF No. 296.  Attached to this Reply were a number of exhibits.  The court disregards these exhibits, as Frost-Tsuji provides no explanation as to why it is submitting evidence for the first time that it had in its possession before the cross-motions for summary judgment were even filed.

In the present reconsideration motion, Frost-Tsuji argues that Highway Inn's use of the drawings Frost-Tsuji created for the restaurant was conditioned on Frost-Tsuji's continued involvement in the project. But such a condition is neither supported by nor reasonably inferable from the record. At best, the letter agreement contemplates Frost-Tsuji's involvement in construction of the restaurant, as it states, "Construction Administration to Certificate of Occupancy <u>is also included</u> in our fees." <u>Id.</u> (emphasis added). This is not, however, equivalent to conditioning use of Frost-Tsuji's architechtural drawings on such involvement.

Clearly, Frost-Tsuji owns the copyrights to its drawings. The letter agreement states that, "per AIA standard contract, Architect's drawings, specifications, and all design work are 'instruments of service', and all copyrights to all items designed are for the specific jobsite address only, and design copyrights, formulas, custom furniture, fixtures or fabrics remain under the ownership of the Architect." <u>Id.</u>

The parties contemplated replacing the letter agreement with a formal contract. Frost-Tsuji was supposed to "convert" the letter agreement "into a Standard AIA Short Form Contract between Architect and Owner, not later than December 31, 2012." <u>Id.</u> Frost-Tsuji did not meet that deadline. Nor did it send a

proposed formal contract to Highway Inn before creating and

delivering the architectural drawing for Highway Inn.[2]

> The January 25, 2013, drawing states:
>
> ALL DOCUMENTS ARE FOR PRICING ONLY AND NOT
> FOR CONSTRUCTION:
>
> All Contract Documents, Drawings,
> Specifications, Calculations, are released
> for PRICING ONLY and are NOT FOR
> CONSTRUCTION, and remain under the SOLE
> OWNERSHIP and COPYRIGHT of the ARCHITECT and
> the CONSULTANTS.

It also states, "© ALL DRAWINGS, DIGITAL FILES, AND WRITTEN

MATERIAL APPEARING HEREIN CONSTITUTE THE ORIGINAL AND UNPUBLISHED

WORDS OF THE ARCHITECT AND THE SAME WAY MAY NOT BE DUPLICATED,

USED OR DISCLOSED WITHOUT THE WRITTEN CONSENT OF THE ARCHITECT IN

ADVANCE OF USE."  It is not surprising that that drawing stated

that it was "FOR PRICING ONLY AND NOT FOR CONSTRUCTION," as it

did not contain the stamp required by the version of Hawaii

Administrative Rule 16-115-9 in effect at the time for filing the

drawing with a public official.  See Haw. Admin. R. § 16-115-9

(effective August 29, 1994, as amended on October 26, 2001, and

---

[2]The court is inferring that Frost-Tsuji actually delivered
the drawing.  Frank H. Frost, of Frost-Tsuji, says that Oversized
Exhibit N is a plan dated January 25, 2013.  See Declaration of
Frank H. Frost ¶ 16, ECF No. 56-3, PageID # 471 (a digital copy
of that plan is located in the record as ECF No. 135-5, PageID
# 1393).  Frost-Tsuji claims that, after it was terminated, the
next architect hired by Highway Inn continued to use that
drawing.  Id.  Frost-Tsuji's argument that Highway Inn is
improperly using its January 25, 2013, drawing in violation of
its copyright rights suggests that Frost-Tsuji delivered the
drawing to Highway Inn.

May 23, 2013) (requiring an architect's stamp whenever a design drawing is "filed with public officials").  It therefore appears that Highway Inn could not have gotten a permit to build the restaurant without submitting plans that were "stamped" by an architect.

Only after creating the drawing did Frost-Tsuji, on February 1, 2013, propose a formal contract.  <u>See</u> Declaration of Monica Toguchi ¶ 11, ECF No. 177-1, PageID # 1779.  The proposed contract was not based on a standard AIA contract with the words "Short Form" in its title, although the letter agreement had referred to conversion into a "Standard AIA Short Form Contract." In any event, it is undisputed that the proposed formal contract was not executed by Highway Inn.

**III.       RECONSIDERATION STANDARD.**

Frost-Tsuji seeks reconsideration of an interlocutory order.  That is, Frost-Tsuji seeks reconsideration of an order granting partial summary judgment on a single claim that left other claims for further adjudication.  Accordingly, the reconsideration motion is governed by Local Rule 60.1, which allows such motions based on "(a) Discovery of new material facts not previously available; (b) Intervening change in law; and (c) Manifest error of law or fact."  "Mere disagreement with a previous order is an insufficient basis for reconsideration." <u>White v. Sabatino</u>, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).

"Whether or not to grant reconsideration is committed to the sound discretion of the court." Id. (internal quotation marks omitted).

IV.    **FROST-TSUJI'S MOTION FOR RECONSIDERATION IS DENIED.**

   A.    **Highway Inn Had a License to Use the Architectural Drawings Created by Frost-Tsuji.**

Frost-Tsuji initially contends that this court erred in determining that Highway Inn had an implied nonexclusive license to use Frost-Tsuji's architectural drawings in connection with the building of its restaurant. Frost-Tsuji argues that it conditioned Highway Inn's use of the drawings on Frost-Tsuji's continued involvement with the construction project. The problem with this argument is that it is not supported by the record and is at odds with the position previously taken by Frost-Tsuji. Conspicuously lacking from the record is any affidavit or declaration from any Frost-Tsuji representative indicating that Frost-Tsuji never intended that Highway Inn use its drawings if Frost-Tsuji was off the project. Frost-Tsuji's earlier position in its Motion for Partial Summary Judgment on Count IV, ECF No. 55, was that the parties intended the "AIA standard contract" to govern their relationship and that, pursuant to section 7.3 of that document, Highway Inn had been granted a nonexclusive license to use Frost-Tsuji's drawings provided that Highway inn "substantially perform[ed] its obligations, including prompt payment of all sums when due." See ECF No. 55-1, PageID

6

# 438. Frost-Tsuji also argued that, when it terminated its
relationship with Highway Inn on May 10, 2014, for nonpayment,
the license it granted to Highway Inn terminated pursuant to
section 7.3 of the standard AIA contract. Id., PageID # 440.
Given those arguments, Frost-Tsuji's argument in the present
reconsideration motion that it <u>never</u> intended to grant a
nonexclusive license to Highway Inn is hard to accept.

Even if the court ignores what appears to be Frost-
Tsuji's earlier concession that it did give Highway Inn a license
to use its drawings, Highway Inn has established as a matter of
law that it had such a license. In the reconsideration motion,
Frost-Tsuji agrees that the court properly adopted the Ninth
Circuit's test for determining when an implied license is
granted. <u>See</u> Motion for Reconsideration, ECF No. 232, PageID
# 2975. Such a license is granted when "(1) a person (the
licensee) requests the creation of a work, (2) the creator (the
licensor) makes that particular work and delivers it to the
licensee who requested it, and (3) the licensor intends that the
licensee-requestor copy and distribute his work." <u>Asset
Marketing Sys., Inc. v. Gagnon</u>, 542 F.3d 748, 754-55 (9th Cir.
2008) (quotation marks and citation omitted). With respect to
the intent element in the third prong, <u>Gagnon</u> notes that "[t]he
relevant intent is the licensor's objective intent at the time of
the creation and delivery of the [copyrighted work] as manifested

by the parties' conduct."  Id. at 756.  Relevant factors in
determining intent include:

> (1) whether the parties were engaged in a
> short-term discrete transaction as opposed to
> an ongoing relationship; (2) whether the
> creator utilized written contracts . . .
> providing that copyrighted materials could
> only be used with the creator's future
> involvement or express permission; and
> (3) whether the creator's conduct during the
> creation or delivery of the copyrighted
> material indicated that use of the material
> without the creator's involvement or consent
> was permissible.

Id. (quoting John G. Danielson, Inc. v. Winchester-Conant Props.,
Inc., 322 F.3d 26, 41 (1st Cir. 2003)).

    In moving for reconsideration, Frost-Tsuji focuses on
the third prong, arguing that it did not intend to grant a
license absent its ongoing participation in the restaurant
project.  See id., PageID # 2977 ("Because of the ongoing
relationship contemplated under the architectural contract,
[Frost-Tsuji] never manifested the intent to grant [Highway Inn]
a nonexclusive license to use [Frost-Tsuji's] Copyrighted
Works.").  But Frost-Tsuji did not condition Highway Inn's use of
the drawings on Frost-Tsuji's continued involvement in the
project.  The only executed contract, the letter agreement,
stated that Frost-Tsuji would provide "Concept, Schematic, Design
Development and Construction Document Phases."  It then indicated
that "Construction Administration to Certificate of Occupancy is
also included in our fees."  Id. (emphasis added).  ECF No. 56-4,

8

PageID # 473.  "Including" construction administration in the fee
is not the same as conditioning the use of the architectural
drawings on Frost-Tsuji's continued involvement with the project.
At most, based on its written contract, Frost-Tsuji had an
expectation that it would be involved throughout construction.

As Gagnon notes, courts may examine unexecuted
contracts "as evidence of the intent of the party submitting the
contract" to determine whether the parties intended that a
license be given to use a copyrighted work.  Gagnon, 542 F.3d at
756.  Given Frost-Tsuji's admission in its motion for summary
judgment that it intended to grant Highway Inn a license to use
its copyrighted works based on the standard AIA contract
language, Frost-Tsuji cannot persuasively argue that it had no
such intent given its expectation of involvement in the whole
project.  In other words, the unexecuted standard AIA contract
that Frost-Tsuji heavily relies on objectively demonstrates its
intent to provide Highway Inn with a license to use Frost-Tsuji's
copyrighted works.

Nor is the court persuaded that Frost-Tsuji's conduct
at the time it delivered the drawings to Highway Inn indicates
that it did not grant a license to Highway Inn.  When Frost-Tsuji
delivered the drawings to Highway Inn, Frost-Tsuji wrote on those
drawings, "FOR PRICING ONLY AND ARE NOT FOR CONSTRUCTION," also
noting that the drawings "MAY NOT BE DUPLICATED, USED OR

DISCLOSED WITHOUT THE WRITTEN CONSENT OF THE ARCHITECT IN ADVANCE OF USE." See Oversized Exhibit N. The language on the document therefore clearly indicates that Frost-Tsuji intended Highway Inn to use the drawing "FOR PRICING." At a minimum, this language indicates that Frost-Tsuji intended that Highway Inn have some use of the drawings. Nevertheless, given Frost-Tsuji's previous argument that its license was revoked, the court is not persuaded by the argument in this reconsideration motion that the language on the copyrighted works indicates that no license was ever intended to be given.

Even when the court turns to the issue of whether Frost-Tsuji revoked the license it gave to Highway Inn to use the copyrighted works, the court finds Frost-Tsuji's analysis unpersuasive. As the court noted in its order granting partial summary judgment, Highway Inn paid a substantial amount of money for the drawings at issue. Under Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558-59 (9th Cir. 1990), full payment is not a condition precedent to a determination that an implied nonexclusive license exists. Because Highway Inn paid substantial consideration for the license, the license it received to use Frost-Tsuji's work was irrevocable. See Gagnon, 542 F.3d at 757. In other words, Frost-Tsuji could not simply revoke the license, which is what its motion for reconsideration claims it did. See ECF No. 232-1, PageID # 2993.

The court concluded in its order granting partial summary judgment in favor of Defendants on the copyright claim that the terms of the standard AIA contract were not incorporated by reference into the letter agreement.  See ECF No. 222, PageID # 2879-80, 2889.  For the reasons discussed below, Frost-Tsuji's motion for reconsideration does not persuade the court otherwise. Nevertheless, even assuming that the terms of the standard AIA contract indicate Frost-Tsuji's intent with respect to the license, those terms do not demonstrate that Frost-Tsuji limited the license in any meaningful way.

Under section 9.5 of the supposed standard AIA contract, Highway Inn would have had the right to terminate the agreement "upon not less than seven days' written notice . . . without cause."  This court determined that Highway Inn terminated its contract with Frost-Tsuji via an e-mail of April 25, 2013, ECF No. 56-10, PageID # 522, and that, at the latest, that termination became effective seven days later.  See ECF No. 222, PageID # 2894.  Frost-Tsuji's motion for reconsideration does not contest this determination.  Instead, Frost-Tsuji ignores that determination and argues that it subsequently terminated the relationship for nonpayment pursuant to section 9.4 of the proposed contract in a writing dated May 3, 2013, that was effective on May 10, 2013.  See Declaration of Bennett J. Chin ¶ 6, ECF No. 56-2, PageId # 465.  Frost-Tsuji says that,

under section 7.3 of the proposed formal contract, its termination of the relationship for cause put an end to any license it had granted Highway Inn to use its copyrighted works. See ECF No. 56-7, PageID # 509.  However, because Highway Inn had already terminated the relationship, Frost-Tsuji cannot be said to have terminated the relationship such that the court should apply the section of the unexecuted agreement governing termination for cause.  Under section 11.9 of the proposed agreement, because Highway Inn had terminated the agreement, it had the right to pay a licensing fee for the continued use of the copyrighted works.  See ECF No. 56-7, PageID # 514.

Admittedly, nothing in the record suggests that Highway Inn has paid a licensing fee for the continued use of Frost-Tsuji's drawings.  This is by no means dispositive.  This court previously determined that the proposed contract that was based on the standard AIA document was not incorporated by reference into the letter agreement.  Certainly, at the time it executed the letter agreement in December 2012, Highway Inn could not have known what the licensing fee would be in the event of a termination of the relationship, as that license fee is not part of the standard AIA contract.  See ECF No. 222, PageID # 2869.  The copyrighted work was apparently delivered to Highway Inn on or about January 25, 2013.  See Oversized Exhibit N; Decl. of Frank H. Frost, ¶ 16, ECF No. 56-3, PageID # 471 (indicating that

Oversized Ex. N is a copy of the plans dated January 25, 2013).

Even if Frost-Tsuji intended to charge such a license fee in the

event Highway Inn terminated the relationship, Frost-Tsuji did

not disclose that intent or what the fee would be until it

subsequently sent the proposed contract to Highway Inn on

February 1, 2013.  See ECF No. 56-7, PageID #s 498, 514.  This

court is unpersuaded by any argument that, for Highway Inn to

continue to use the copyrighted works, it had to pay a license

fee that was not even proposed to Highway Inn until after the

copyrighted work had been delivered, especially when Highway Inn

never executed the proposed agreement.

> **B.    Frost-Tsuji Waived the Argument that it Restricted
>         the Scope of the License it Granted to Highway
>         Inn.**

In its motion for summary judgment on Count IV, ECF No.

55, and in its opposition to the cross-motion for summary

judgment on Count IV, ECF No. 198, Frost-Tsuji admitted that it

granted a license to Highway Inn to use its copyrighted work but

argued that it revoked that license.  Frost-Tsuji did not argue

that it restricted the scope of the license through the language

on the copyrighted work that limited its use to pricing and

stated that the work was not for construction.  On this motion

for reconsideration, Frost-Tsuji now argues that, when it

delivered the copyrighted work to Highway Inn, it restricted use

of the copyrighted work to pricing only and prohibited its use in construction. Frost-Tsuji has waived this argument.

Under Local Rule 7.4, "Any argument raised for the first time in the reply shall be disregarded." If Frost-Tsuji could not make a new argument for the first time in its reply in support of its motion for summary judgment, it certainly cannot do so after filing that reply. Frost-Tsuji's belated attempt to restrict the scope of the license is unavailing.

Even if Frost-Tsuji had not waived the argument, Frost-Tsuji would not prevail with that argument. Frost-Tsuji intended to grant a license to Highway Inn to use its copyrighted designs under the proposed contract it sent to Highway Inn in February 2013, after it delivered the copyrighted work to Highway Inn in January 2013. For example, in its motion for summary judgment, Frost-Tsuji wrote, "Prior to Frost-Tsuji's termination, [Highway Inn's] license to use the Plans depended on its payment for services. Since [Highway Inn] did not pay Frost-Tsuji, it lost its license to use the Plans. Moreover, no one had a license to copy or use the Plans following Frost-Tsuji's termination." ECF No. 55-1, PageID # 448.

In the order granting summary judgment to Defendants on Count IV, this court agreed that Frost-Tsuji had granted a license to Highway Inn to use the drawings. Although the court disagrees with Frost-Tsuji's assertion that the proposed contract

governs the license granted to Highway Inn, the court views the proposed contract as objectively demonstrating Frost-Tsuji's intent to grant a license to Highway Inn to use those drawings. Highway Inn's implied nonexclusive license to use the drawings is a complete defense to the copyright claim asserted in Count IV. This court has already ruled that the proposed contract did not govern the parties' relationship, and that even if Highway Inn made only partial payment for services rendered under the letter agreement, that did not affect the license given.  Instead, to the extent Frost-Tsuji is owed money under the contract, Frost-Tsuji has state-law claims for nonpayment.  <u>See</u> ECF No. 222, PageID #s 2886-88.

In any event, Frost-Tsuji's drawing dated January 25, 2013, was not the actual drawing used in constructing the restaurant.  That drawing lacked the requisite stamp for submission to government officials and therefore could not have been used to obtain a building permit for construction of the restaurant.  Interpreting the facts in the light most favorable to Frost-Tsuji, the court may assume that someone, possibly the new architect, Bryce E. Uyehara, used Frost-Tsuji's January 25, 2013, drawing as a starting point in creating the drawing that was eventually stamped by Uyehara and used in the construction of the restaurant.  <u>See</u> Oversized Ex. N.  A comparison of Frost-Tsuji's and Uyehara's drawing indicates that Frost-Tsuji's

drawings was not simply photocopied, its copyright management information erased, and Uyehara's stamp added.  See id.  Instead, even if Frost-Tsuji's account is correct, Frost-Tsuji's design appears at most to have possibly been relied on for the ultimate design of the restaurant, which was, according to Frost-Tsuji, "substantially similar" to its copyrighted work.  See ECF No. 55, PageID # 446-47.

Highway Inn had a license to use the January 25, 2013, drawing, and that license was not limited by a notation that the drawing was not to be used in construction.  Frost-Tsuji has not given the court any evidence showing why that notation was placed on the document.  Certainly, there can be no dispute that, at the time the document was delivered by Frost-Tsuji to Highway Inn, Frost Tsuji intended the drawing to be the design of the restaurant and intended to prepare a subsequent version of the drawing for use in the construction of the restaurant.  Any expectation by Frost-Tsuji that it would continue to be involved in the project and would receive more payment does not negate the license it gave to Highway Inn to use its drawing.

### C. The Entire Standard AIA Contract Was Not Incorporated By Reference Into the Letter Agreement.

In the order granting summary judgment in favor of Defendants on Count IV, the court determined that the letter agreement did not incorporate the terms of the standard AIA

contract into it. Nothing in the reconsideration motion justifies a different result.

The letter agreement mentions the standard AIA contract in three places. First, in the paragraph regarding termination, the letter agreement states, "Any termination of this Agreement shall be per AIA Standard Contract language which is either party may terminate this agreement at any time with 7 day written notice." Second, in the paragraph regarding copyrights, it states, "Note that per AIA standard contract, Architect's drawings, specifications, and all design work are 'instruments of service', and all copyrights to all items designed are for the specific jobsite address only, and design copyrights . . . remain under the ownership of the architect." Third, the letter agreement states that Frost-Tsuji "will convert this Letter Agreement into a Standard AIA Short Form Contract between Architect and Owner, not later than December 31, 2012." See ECF No. 56-4, PageID # 473. As the court previously held, this does not mean that Highway Inn agreed to every term contained in the standard AIA form contract, as Highway Inn could not have known how the blanks in the standard AIA form contract would be filled out. If the parties had intended to have the standard form govern their relationship, they could have executed the standard form, rather than a letter agreement. Highway Inn is not bound by the terms of the lengthy standard AIA contract that were not

incorporated into the letter agreement.  See ECF No. 222, PageID # 2879.

Frost-Tsuji contends that the court erred in determining that the record does not disclose the parties' intent as to how to read the termination language in the letter agreement, arguing that there is a genuine issue of fact as to whether the termination language contained in the standard AIA contract was incorporated by reference into the letter agreement by the language "shall be per AIA Standard Contract language which is either party may terminate this agreement at any time with 7 day written notice."  Frost-Tsuji misconstrues the court's order.  The court's order recognized that factual issues should be tried but noted that it had before it no declaration, affidavit, deposition testimony, or other evidence that might enable the trier of fact to determine what the parties intended by the termination language in the letter agreement.  It was that circumstance that caused the court to apply the rule of last resort--interpreting the ambiguous language against the drafter.  See ECF No. 222, PageID # 2891-92.

Frost-Tsuji had it within its power to submit evidence, if it existed, as to what it intended by the termination language in the letter agreement.  It is because Frost-Tsuji failed to identify the evidence it would have introduced at trial that the court construed the ambiguous language against it.  In so ruling,

the court did not render meaningless any material term of the letter agreement.  The court simply interpreted the ambiguous language of that agreement based on a longstanding rule governing the construction of contract terms when there is no evidence establishing the intent of the parties.

The letter agreement referred to converting it into a "Standard AIA Short Form Contract between Architect and Owner." Frost-Tsuji says that AIA Document B101-2007 is that document. AIA Document B101-2007 is a "Standard Form of Agreement Between Owner and Architect."  See ECF No. 56-5.  Even if this document is the "Short Form Contract" referred to in the letter agreement, and even if this document governed the relationship between Frost-Tsuji and Highway Inn, Frost-Tsuji would not be entitled to a different ruling from this court.

Under section 7.3 of that contract, the architect grants the owner a nonexclusive license to use the copyrighted work "provided that the Owner substantially performs its obligations, including prompt payment of all sums when due." Under that section, read in conjunction with sections 9.1 and 9.4, when the architect terminates the agreement for nonpayment, the license terminates.  See ECF No. 56-5, PageID #s 486-89.  The standard AIA contract also provides that the owner may terminate the agreement on seven days' written notice for the owner's convenience and without cause.  Id., PageID # 489.

In the court's order granting summary judgment in favor of Defendants on Count IV, the court determined that Highway Inn terminated its relationship with Frost-Tsuji, effective at the latest on May 3. See ECF No. 222, PageID # 2894. This is consistent with Frost-Tsuji's admission in its opposition to the motion for summary judgment: "On April 25, 2013, [Highway Inn] attempted to terminate the Letter Agreement without proper notice. . . . The termination became effective on May 3, 2013, in accordance with the terms of the Letter Agreement . . . ." ECF No. 198, PageID # 2167. Accordingly, Frost-Tsuji's attempt to terminate the agreement effective May 10, 2013, had no legal effect, as the relationship had already been terminated. Frost-Tsuji is therefore unpersuasive in arguing that, under section 7.3 of the standard AIA contract, the license it granted to Highway Inn terminated when Frost-Tsuji terminated the agreement for nonpayment.

Nor can Frost-Tsuji rely on section 11.9 of the standard AIA agreement as requiring Highway Inn to pay a license fee for the continued use of the copyrighted work after Highway Inn terminated the relationship. That license fee was not identified at the time of the letter agreement. See ECF No. 56-5, PageID # 491. Accordingly, even if the standard form AIA contract was incorporated by reference into the Letter Agreement, Highway Inn was not on notice of what, if any, license fee would

be required under section 11.9 of the standard agreement.  There
was simply no meeting of the minds on this point.

    In part, section 7.3 of the standard AIA contract,
states that an owner has a license to use copyrighted works so
long as it "substantially performs its obligations, including
prompt payment of all sums when due."  ECF No. 56-5, PageID
# 486.  It is not at all clear that this part of section 7.3 was
incorporated by reference into the letter agreement.  Although
section 7.3 is in the section of the alleged standard form
governing copyrights, see ECF No. 56-5, PageID # 486, the letter
agreement says only that Frost-Tsuji is the owner of the
copyright of the drawings and mentions nothing about licenses.
See ECF No. 56-4, PageID # 473.  The reference in the letter
agreement to a future conversion into a standard short form AIA
agreement hardly appears sufficient to incorporate the total of
section 7.3 into the letter agreement.  See ECF No. 222, PageID
# 2879-80.

    At most, based on section 7.3 of the standard AIA
contract, Frost-Tsuji can argue that it intended that Highway Inn
have a license to use the copyrighted work only if Highway Inn
"substantially perform[ed] its obligations, including prompt
payment of all sums when due."  ECF No. 56-5, PageID # 486.
However, as discussed above, once a nonexclusive license is
implied, that license becomes irrevocable upon payment of

substantial consideration, even if full payment is not made. Frost-Tsuji's remedy is not under copyright law, but under a state contract law.

There is no dispute that, at the time the drawing was delivered to Highway Inn in January 2013, Highway Inn had been paying its bills. On or about February 6, 2013, Frost-Tsuji sent Highway Inn a bill for $25,286.56, which Highway Inn paid the same day. See ECF Nos. 177-10 and -11, PageId #s 1935, 1937. Frost-Tsuji's own accounting indicates that Highway Inn paid a subsequent bill of $17,912 and that the total Highway Inn paid was $81,620.98, $54,400 of which was for services contemplated by the letter agreement. See ECF No. 56-12, PageID # 527. Highway Inn therefore paid a substantial amount, giving it an irrevocable license to use the copyrighted works delivered to it.

### D. The Court Did Not Err in Determining that Frost-Tsuji Had Agreed to Allow Ho`ola Mau, Highway Inn's LLC, to Run the Restaurant.

Frost-Tsuji argues that this court erred in determining that Ho`ola Mau did not violate its copyright. The court disagrees.

Frost-Tsuji contends that, at the time the letter agreement was signed in December 2012, it did not know of Highway Inn's intention to create Ho`ola Mau LLC and to use that entity to run its restaurant. See Declaration of Frank H. Frost ¶ 11, ECF No. 199-2, PageID # 2197. Even if true, that does not mean

that Highway Inn could not transfer its license to use the copyrighted works to its LLC or that Ho`ola Mau did not itself have an implied nonexclusive license granted to it by Frost-Tsuji. Monica Toguchi explained that Frost-Tsuji eventually understood that the restaurant would be placed in the name of an LLC. See Declaration of Monica Toguchi ¶ 9, ECF No. 177-1, PageID # 1778. On or about February 11, 2013, Wendy Tsuji, of Frost-Tsuji, sent Toguchi an e-mail asking for the final legal name that would appear on the drawings and specifications. See ECF No. 177-6, PageID # 1883. That e-mail asked whether the name was going to be "your new LLC." Id. Toguchi responded the same day that "The LLC is Ho`ola Mau but has not been registered." Id., PageID # 1886. This certainly suggests that Frost-Tsuji and Highway Inn came to an agreement to allow Ho`ola Mau to use the copyrighted works in building the restaurant.

In the motion for reconsideration, Frost-Tsuji disputes any such agreement, contending that it actually prohibited Ho`ola Mau from using the drawings. No timely submitted evidence supports that argument. Frost-Tsuji now submits for the first time evidence that was in its possession at the time of the original motions. Such evidence does not justify reconsideration of the order on the original motions. Local Rule 60.1(a) allows reconsideration based on new material facts only when those facts were not previously available. Not only does Frost-Tsuji fail to

23

show that the new evidence was previously unavailable, Frost-Tsuji offers no explanation at all for its tardy submission of the material.  Accordingly, the court does not consider the e-mail exchange attached as Exhibit C to the motion for reconsideration, ECF No. 232-5.

Frost-Tsuji's motion for reconsideration appears to be arguing that its written acceptance of Ho`ola Mau was a necessary prerequisite to a determination that Ho`ola Mau had a license to use the copyrighted works.  But the Ninth Circuit has ruled that nonexclusive licenses "'may be granted orally, or may even be implied from conduct.'"  Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A], at 10-36 (1989)).  This court's determination that Highway Inn was permitted to transfer its license to use Frost-Tsuji's copyrighted work to Ho`ola Mau was based on Frost-Tsuji's own conduct.  See ECF No. 222, PageID # 2895-971.

## V.        CONCLUSION.

Because Frost-Tsuji fails to demonstrate any reason this court should reconsider its previous order granting summary judgment in favor of Defendants on Count IV, Frost-Tsuji's motion for reconsideration, ECF No. 232, is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 27, 2014.



　/s/ Susan Oki Mollway　
Susan Oki Mollway
Chief United States District Judge


Frost-Tsuji Architects v. Highway Inn, Inc., et al., Civ. No. 13-00496 SOM/BMK; ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER FILED ON AUGUST 26, 2014